Thomas A. Vogele, Esq. (SBN 254557)
Brendan M. Loper, Esq. (SBN 282198)
THOMAS VOGELE & ASSOCIATES, APC
3199 Airport Loop Road, Suite A-3
Costa Mesa, California 92626
Telephone:   (714) 641-1232
Facsimile:    (888) 391-4105
Email:         tvogele@tvalaw.com

Attorneys for debtor-in-possession Santa Cruz
Berry Farming Company, LLC, a California
limited liability company

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re<br><br>SANTA CRUZ BERRY FARMING COMPANY, LLC, a California limited liability company<br><br>      Debtor-In-Possession. | ) CASE NO.: 15-51771<br>)<br>) Related Case No. 15-51772 (In re Corralitos Farms, LLC)<br>)<br>) Chapter 11<br>)<br>) Assigned for all purposes to Hon. M. Elaine Hammond<br>)<br>) **NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR (I) ORDER APPROVING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, AND (III) SCHEDULING FINAL HEARING; DECLARATION OF ROBERT FRITZ KOONTZ AND THOMAS A. VOGELE, ESQ. IN SUPPORT THEREOF; [PROPOSED] ORDER**<br><br>Hearing Date:   May 29, 2015<br>Hearing Time:   11:00 A.M.<br>Location:        United States Courthouse,<br>                 Courtroom 3070<br>                 280 South First Street<br>                 San Jose, CA 95113-3099 |

Case: 15-51771   Doc# 13   Filed: 05/27/15   Entered: 05/27/15 16:48:14   Page 1 of 36

TO THE HONORABLE M. ELAINE HAMMOND, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; ALL OTHER INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 363 AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL OF EXISTING SECURED LENDERS, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, AND (III) SCHEDULING FINAL HEARING.

IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY ONE (21) DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.

IF A PARTY REQUESTS EMERGENCY CONSIDERATION, THE COURT MAY ACT EXPEDITIOUSLY ON THE MATTER. IF THE COURT ALLOWS A SHORTER RESPONSE TIME THAN TWENTY ONE (21) DAYS, YOU MUST RESPOND WITHIN THAT TIME. IF THE COURT SETS AN EMERGENCY HEARING BEFORE THE RESPONSE TIME WILL EXPIRE, ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS. IF AN EMERGENCY HEARING IS NOT SET, YOU MUST RESPOND BEFORE THE RESPONSE TIME EXPIRES.

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL

1366-007; 38717

1

**THE DEBTORS HAVE REQUESTED THAT THIS EMERGENCY**

2

**MOTION BE CONSIDERED AT THE DEBTORS' FIRST DAY HEARINGS.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

Case: 15-51771    Doc# 13    Filed: 05/27/15    Entered: 05/27/15 16:48:14    Page 3 of 36

1366-007; 38717

The Debtors in these two Chapter 11 cases are Santa Cruz Berry Farming Co., LLC, a California limited liability company (**"Santa Cruz"**); and Corralitos Farms, LLC, a California limited liability company (**"Corralitos"**). Both companies are family owned farming enterprises with operations in Santa Cruz County.

The above-captioned debtors and debtors-in-possession (collectively the **"Debtors"**), by and through their undersigned proposed attorneys, hereby file this motion (the **"Motion"**) for an order, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363, Bankruptcy Rules 2002, 4001, and 9014, and for entry of an order (i) authorizing the Debtors to use cash collateral of existing secured lenders, (ii) granting adequate protection for the use thereof, and (iii) scheduling a final hearing. In support thereof, the Debtors would show as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157. Venue of these Chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are Bankruptcy Code §§ 105, 361, 362, 363 and Bankruptcy Rules 2002, 4001, and 9014.

## II. BACKGROUND

**Business Description**

1. On May 26, 2015 (the **"Petition Date"**), the Debtors filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code (the **"Bankruptcy Code"**) in the United States Bankruptcy Court for the Northern District of California, San Jose Division (the **"Court"**). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors-in-possession. The Debtors have requested joint administration of these chapter 11 cases by a motion filed concurrently herewith. No trustees or examiners have been appointed in these cases.

2. Santa Cruz is a family owned farming concern growing and harvesting conventional and certified organic strawberries in Santa Cruz County. Santa Cruz was founded in

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

2010 and its headquarters is in Watsonville, California. Santa Cruz is owned by Robert Fritz Koontz and Andrew Koontz. Andrew is not involved in the company's operations. Santa Cruz holds a Perishable Agricultural Commodities Act (**"PACA"**) license.

3. Corralitos, also family owned,[1] is an affiliate and operational predecessor to Santa Cruz, formerly engaged in a similar business activity. Corralitos was formed in 1999 and its headquarters is in Watsonville, California. Corralitos is owned by Robert Fritz Koontz, Andrew Koontz and Rodney Koontz. Andrew and Rodney are not involved in the company's operations.

4. Corralitos was the target of an organizing effort by the United Farm Workers (**"UFW"**) in 2010 that resulted in an election overseen and certified by the National Labor Relations Board in 2012. Pursuant to that election, Corralitos' roughly 350 employees voted against the union. As a result of that election, however, Corralitos incurred legal and other expenses in excess of $2 million, none of which were recoverable from the UFW.

5. Corralitos operated both as a farmer, growing and harvesting its own strawberries on land it leased, as well as a grower's agent, subcontracting with other strawberry growers to sell their fruit under the Corralitos label. At its peak, Corralitos had farming operations or sub-growers in Santa Cruz, Monterey, Santa Maria, Santa Barbara and Orange Counties.

6. Corralitos ceased farming operations in or about 2011, at which time its sole revenues were derived from its minority ownership interests in two limited liability companies, K&M Enterprises, LLC, a cooler of fruit, and Kanaka Peaks Research, LLC, a company doing research into best practices and yield maximization for organic strawberries.

7. Santa Cruz was formed in 2010 to focus solely on growing, harvesting and selling fruit grown only by the company. Santa Cruz farms approximately 200 acres of leased property in Santa Cruz County on which they grow and harvest certified and conventional strawberries.

---

[1] Santa Cruz membership interests are held by Robert Fritz Koontz (50%) and Andrew Koontz (50%). Corralitos membership interests are held by Robert Fritz Koontz (33.33%), Rodney Koontz (33.33%) and Andrew Koontz (33.33%). Robert Fritz Koontz is the Manager of both companies.

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

8. The two Debtors generate revenues by growing and harvesting conventional and certified organic strawberries which are then sold by agents to grocery stores and membership clubs throughout the United States and Canada. Corralitos generates a small amount of revenue (comparatively speaking) from its minority interests in the two companies identified hereinabove.

9. All faming and transportation equipment used by Santa Cruz is titled in the name of Corralitos. Corralitos and Santa Cruz are co-obligors on all secured debt.

**Description of Secured Debt**

10. Santa Cruz and Corralitos are joint borrowers/obligors pursuant to that certain senior secured Promissory Note for an approximate $1.2 million amended and restated renewable term loan originally dated March 14, 2001, (as amended, renewed, modified and supplemented) (the **"Senior Facility"**), whereby California Coastal Rural Development Bank (**"Cal Coastal"**) has a senior priority lien on all assets of both Debtors, including real and personal property, farming and transportation equipment, and growing crops, as evidenced by financing statements filed with the Secretary of State. Approximately $1,217,421.11 is currently outstanding under the Senior Facility.

11. Santa Cruz and Corralitos are joint/borrowers/obligors pursuant to a series of promissory notes and security agreements (the **"Junior Facility"**) in favor of Tom Lange Company, Inc. (*aka* Lange Trading Company, Inc. and Tom Lange Company International, Inc.) (collectively **"Lange"**), executed from April 14, 2003 to February 13, 2014. Pursuant to the Junior Facility, Lange has a junior priority lien on all assets of both Debtors, including real and personal property, farming and transportation equipment, and growing crops, as evidenced by financing statements filed with the Secretary of State. Approximately $2,296,325.00 million is alleged[2] to be currently outstanding under the Junior Facility.

12. All of the members of both Debtors have executed personal guarantees of the Junior Facility in favor of Lange.

---

[2] Debtors have not received an accounting of advances from and payments made by Lange to itself under the Junior Facility.

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

13.     Lange served as the Debtor's exclusive marketing agent from January 1, 2011 to May 22, 2015, pursuant to a written "Marketing Agreement." Under the terms of that agreement, Lange agreed to sell 100% of Debtors' fruit and to pay Debtors the full market price less a 6.5% sales commission. The agreements, drafted by Lange's attorneys, allowed Lange to make whatever pricing adjustments it, in its sole discretion, felt were necessary. In essence, Lange could and in fact did, arbitrarily make adjustments that had the effect of "selling" Debtor's fruit for less than $0, thereby depriving Debtors of any sales proceeds from the sale of its products and even charging Debtors a 6.5% commission on the market price. From 2012 through and including 2014, Lange made adjustments totaling in excess of $2.6 million, none of which were properly documented or justified.

14.     In addition to Lange's practice of selling Debtors' fruit for less than $0, Lange also arbitrarily and without express authority, deducted loan payments it claimed were owed from the sale proceeds Lange generated by selling Debtors' fruit. What Lange didn't take with its left hand, it took with its right, leaving Debtor without adequate working capital to even pay its workers who harvested the fruit.

**Adversary Action**

15.     Importantly, Debtors retained Polis & Associates, APLC as special litigation counsel to file an adversary action against Lange, to among other things, (i) avoid transfers to an insider within one year of case commencement pursuant to 11 U.S.C. § 547, (ii) avoid fraudulent transfers pursuant to 11 U.S.C. § 548, (iii) assert a setoff against Lange's creditor claim pursuant to 11 U.S.C. § 553, and (iv) to equitably subordinate Lange's claims pursuant to 11 U.S.C. § 510(c). Debtors reserve their right to seek further damages against Lange for its post-petition interference with Debtors' prospective economic advantage and contracts.

16.     In the adversary, to be filed as soon as practicable, the Debtors will assert, among other things, that Lange improperly exerted a level of control over the Debtors' business as to be indistinguishable from an equity interest holders. For example, Lange routinely deducted part or all of the Debtors' net sales proceeds to repay its own advances without an express right to do so,

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

Case: 15-51771     Doc# 13     Filed: 05/27/15     Entered: 05/27/15 16:48:14     Page 7 of 36
1366-007; 38717

thereby forcing the Debtors to borrow more money from Lange, much as a Payday lender would do to an unfortunate borrower. Approximately $2.3 million is alleged to be outstanding under the Junior Facility. Debtors believe the value of their claims against Lange exceed $3.9 million, however, many of the documents necessary to establish the precise amount are solely within Lange's control.

17.    Together, the lenders under the Senior Facility and the Junior Facility are referred to herein as the "**Prepetition Lenders**." All collateral securing the Prepetition Indebtedness is referred to herein as the "**Prepetition Collateral**."

## III.    RELIEF REQUESTED

18.    As a consequence of the prepetition secured financing, all cash in the Debtors' possession or in which the Debtors have an interest on and after the Petition Date constitutes asserted cash collateral (**"Cash Collateral"**) in which the Prepetition Lenders may assert an interest within the meaning of Section 363(a) of the Bankruptcy Code. By this Motion, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, the Debtors request that the Court enter an order (i) approving the Debtors' interim use of Cash Collateral, (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral, and (iii) scheduling a final hearing (the **"Final Hearing"**) for this Court to consider entry of a final order (the **"Final Order"**) authorizing and approving the relief requested in this Motion.

## IV. BASIS FOR RELIEF

19.    Under 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in such cash collateral consents or if the Court, after notice and a hearing, authorizes the use of the cash collateral. Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

20.    Bankruptcy Rule 4001(b) and (d) govern the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration of

- 8 -
**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

1  such motions for cases in which immediate interim relief may be crucial to the success of a

2  reorganization.

3        21.    At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the

4  burden of proof on the issue of adequate protection, and the party claiming an interest in the cash

5  collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.

6        22.    As of the Petition Date, the Debtors do not have sufficient unencumbered cash to

7  fund their business operations and pay present operating expenses.  The Debtors have an urgent

8  need for the immediate use of the Cash Collateral pending a final hearing on this Motion.

9        23.    The operation of the Debtors' farming activity is extremely labor and capital

10  intensive, and any lapse in operations, no matter how transitory, could have a devastating

11  economic impact on the going concern value of the Debtors' business.  For example, the Debtors

12  incur ongoing labor expenses related to harvesting, transporting and packaging the fruit.   Debtors'

13  employees, mostly hourly workers, will refuse to work absent the Debtors' ability to pay them for

14  their labor on a weekly basis.  Similarly, without the ability to pay to cool the fruit prior to

15  shipment across the country or into Canada, the fruit will spoil and any value derived therefrom

16  will plummet.

17        24.    Absent the use of Cash Collateral, these expenses cannot be met and the sole

18  income producing assets of the Debtors – the strawberry farms – will be unable to operate and

19  could possibly be subject to immediate shutdown, leading to the total loss of the value of the

20  growing crops.

21        25.    Accordingly, the Debtors face "immediate and irreparable harm to the estate"

22  absent the emergency consideration of the relief requested in this motion.  The immediate use is

23  necessary, and it will stabilize the Debtors' operations and revenue by paying ordinary,

24  postpetition operating expenses, as well as any court approved prepetition expenses that may be at

25  issue.  Without authority to use Cash Collateral, the Debtors will not be able to function as a going

26  concern, and will not be able to proceed to consideration of a plan of reorganization.  Accordingly,

27

28

- 9 -

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

1    authority to use Cash Collateral is necessary to avoid the shutdown of the Debtors' businesses, and

2    will be in the best interests of the Debtors, their estate and their secured and unsecured creditors.

3          26.     The Debtors believe that the Prepetition Lenders are adequately protected for the

4    use of the Cash Collateral in that the orderly liquidation value of the Prepetition Lenders'

5    collateral exceeds the amounts outstanding under the Senior Facility and Junior Facility.

6    Specifically, as of the Petition Date, the Prepetition Lenders' combined debt is approximately $3.5

7    million and the appraised value of the equipment and "cash in crop" value exceeds $7 million.  "A

8    sufficient equity cushion is itself a recognized form of adequate protection."  Baybank-Middlesex

9    v. Ralar Distributors, Inc., 69 F.3d 1200, 1203 (1st Cir. 1995).  Further, "[a] classic method for

10   finding adequate protection is the existence of an equity cushion.  In fact, it has been found that an

11   equity cushion standing alone can provide evidence of adequate protection for a secured claim."

12   In re Patrician St. Joseph Partners Ltd., 169 B.R. 669, 677 (D. Ariz. 1994) (citing In re Mellor, 734

13   F.2d 1396, 1400 (9th Cir. 1984)).

14         27.     Additionally, through this Motion, the Debtors intend to provide further adequate

15   protection, to the extent of any diminution in value, to the Prepetition Lenders for the use of the

16   Cash Collateral by offering to maintain the going concern value of the Prepetition Lenders'

17   collateral by using the Cash Collateral to continue to operate the business and by providing to the

18   Prepetition Lenders postpetition replacement liens pursuant to 11 U.S.C. § 361(2) in accounts

19   receivable, including cash generated or received by the Debtors subsequent to the Petition Date,

20   but only to the extent that the Prepetition Lenders had valid, perfected prepetition liens and

21   security interests in such collateral as of the Petition Date. The priority of any postpetition

22   replacement liens granted to the Prepetition Lenders shall be the same as existed as of the Petition

23   Date.

24         28.     The continuation of the Debtors' operations likely presents the best opportunity for

25   the Prepetition Lenders to receive the greatest recovery on account of their claims.  Accordingly,

26   the Debtors submit that use of the Cash Collateral will allow the Debtors to continue their

27   operations and thereby protect the Prepetition Lenders' interests.  Courts have consistently

28

- 10 -

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

recognized that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the collateral. *See, e.g.*, In re Pursuit Athletic Footwear, Inc., 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected); In re 499 W. Warren St. Assocs., Ltd. P'ship, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); In re Willowood E. Apartments of Indianapolis II, Ltd., 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); In re Stein, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); In re Aqua Assocs., 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

### V. REQUEST FOR INTERIM AND FINAL RELIEF

29.    An immediate need exists for the Debtors to obtain approval of the use of Cash Collateral in order to meet key expenses as described above and as identified in the interim budget (**"Interim Budget"**) attached hereto as **Exhibit "A."** Without the immediate use of the Cash Collateral for an interim period, the Debtors will essentially be forced to discharge their 150-200 employees with the almost immediate and complete loss of the $5.6 million value of growing crops, and close their business.

30.    Obviously this would have a severe negative impact upon the Debtors' going concern value and ability to successfully create value for all creditors. The Debtors' business, as a going concern, has a value far in excess of any value that might be obtained in a Chapter 7 liquidation. A complete shutdown of the Debtors; business, even for a short period, would result in the loss of employees and creditors and equity receiving substantially less from the enterprise than going concern value. Accordingly, it is imperative that a preliminary hearing be set immediately.

- 11 -

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

31.     Pursuant to Bankruptcy Rule 4001, the Debtors requests that the Court set a preliminary hearing on the use of Cash Collateral, and that at such preliminary hearing, the Court authorize the temporary interim use of Cash Collateral consistent with the Interim Budget, in order to avoid immediate and irreparable harm to these bankruptcy estates pending a final hearing.

32.     The Debtors' also request a final hearing as soon as the Court's schedule permits, following 15 days after service of this Motion.

## VI. NOTICE

**Notice With Respect to Interim Cash Collateral**

33.     Notice of this Motion has been or will be provided to (a) the United States Trustee for the Northern District of California; (b) the Debtors' known or alleged secured creditors; (c) the thirty (30) largest unsecured creditors of the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Northern District of California; (e) the Internal Revenue Service; (f) any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002; and (g) any other government agencies required to receive notice under applicable Bankruptcy Rules and the Local Rules of the United States Bankruptcy Court for the Northern District of California. The Debtors submit that no further notice of this Motion is required. The Debtors submit that under the circumstances, no further notice of the interim hearing is necessary and request that any further notice be dispensed with and waived.

**Notice With Respect to Final Cash Collateral**

34.     The Debtors respectfully request that the Court set a final hearing date on the Motion and authorize the Debtors to serve a copy of this Motion and any interim order which fixes the time and date for filing objections to this Motion, by first class mail or facsimile or email upon (a) the Office of the United States Trustee for the Northern District of California, (b) all known or alleged secured creditors, (c) the 30 largest unsecured non-insider creditors of the Debtors (on a consolidated basis), (d) all known owners of an equity interest over 5% in Santa Cruz and Corralitos, (e) all Debtor professionals, (f) all members of any official committee of unsecured creditors that may be appointed, (g) counsel for, and any professionals retained by, any official

- 12 -

Case: 15-51771   Doc# 13   Filed: 05/27/15   Entered: 05/27/15 16:48:14   Page 12 of 36

1   committee of unsecured creditors that may be appointed, (h) the United States Attorney's Office

2   for the Northern District of California, (i) the Internal Revenue Service, (j) any persons who have

3   filed a request for notice pursuant to Bankruptcy Rule 2002, and (k) any such other government

4   agencies to the extent required by the Bankruptcy Rules and Local Rules. The Debtors request

5   that the Court deem such notice of the final hearing to be sufficient notice under Bankruptcy Rule

6   4001.

7       WHEREFORE, the Debtors request that this Court enter an Order authorizing the Debtors

8   to use Cash Collateral as described herein, setting the Motion for a final hearing, and granting such

9   other and further relief as the Court may deem just and proper.

10

11  Dated: May 27, 2015                Respectfully submitted,

12                                     THOMAS VOGELE & ASSOCIATES, APC

13                                     By: /s/ Thomas A. Vogele
                                       Thomas A. Vogele, Esq.
14                                     Brendan M. Loper, Esq.

15                                     Proposed General Insolvency Counsel for Santa Cruz
                                       Berry Farming Company, LLC and Corralitos Farms,
16                                     LLC, the Debtors and Debtors-in-Possession

17

18

19

20

21

22

23

24

25

26

27

28
                                      - 13 -
        **NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH
                                      COLLATERAL**

1366-007; 38717

# DECLARATION OF ROBERT FRITZ KOONTZ

I, ROBERT FRITZ KOONTZ, declare as follows:

1. I am the Manager and a Member of Santa Cruz Berry Farming Company, LLC, a California limited liability company (**"Santa Cruz"**). I am also a Member of Corralitos Farms, LLC, a California limited liability company (**"Corralitos"**) (collectively, Santa Cruz and Corralitos are referred to as **"Debtors"**). The Members of Santa Cruz and Corralitos authorized me, pursuant to written resolutions, to file petitions under Chapter 11 of the Bankruptcy Code on behalf of both companies.

2. I submit this supplemental declaration in support of Debtors' emergency motion for an order approving the use cash collateral, granting adequate protection for use thereof, and scheduling a final hearing (the **"Motion"**). I have personal knowledge of all facts stated in this declaration except those stated on information and belief and as to those, I believe them to be true based on my personal investigation. If called to do so, I could and would testify fully as stated herein. I do not intend to waive attorney-client privilege by submitting this declaration.

3. Pursuant to the Debtors' resolutions, I executed a retainer agreement with Thomas Vogele & Associates, APC to serve as general insolvency counsel to the Debtors. I also executed a retainer agreement with Polis & Associates, APLC to serve as special litigation counsel to the Debtors.

4. My brothers Andrew and Rodney Koontz and I formed Corralitos in or about 1999 to grow, harvest and market our own strawberries as well as act as a grower's agent for other strawberry farmers in Central and Southern California.

5. Corralitos operated both as a farmer, growing and harvesting our own strawberries on land it leased, as well as a grower's agent, subcontracting with other strawberry growers to sell their fruit under the Corralitos label. At its peak, Corralitos had farming operations or sub-growers in Santa Cruz, Monterey, Santa Maria, Santa Barbara and Orange Counties.

6. In 2010, the United Farm Workers ("UFW") tried to organize Corralitos' workers. My brothers and I did not want to have the UFW represent our workers and our workers expressed

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

no interest in having the UFW represent them, so we resisted its efforts.  In 2012, the National Labor Relations Board supervised an election in which our workers rejected the UFW as their bargaining agent.  As a result of that election, however, Corralitos incurred legal and other expenses in excess of $2 million, none of which were recoverable from the UFW.

7.      Because of the union battle and the costs we incurred, Corralitos ceased farming operations in or about 2011, at which time its sole revenues were derived from its minority ownership interests in two limited liability companies, K&M Enterprises, LLC, a cooler of fruit, and Kanaka Peaks Research, LLC, a company doing research into best practices and yield maximization for organic strawberries.

8.      My brother Andrew Koontz and I formed Santa Cruz in 2010 to act grow, harvest and sell conventional and certified organic strawberries in Santa Cruz County.  The company's headquarters is in Watsonville, California.  Andrew and I each own 50% of the company, although Andrew is not involved in the company's operations.  Santa Cruz holds a Perishable Agricultural Commodities Act (**"PACA"**) license.

9.      Unlike Corralitos, Santa Cruz only grows, harvests and sells fruit grown by Santa Cruz.  Santa Cruz farms approximately 200 acres of leased property in Santa Cruz County on which we grow and harvest certified and conventional strawberries.

10.     All of the farming and trucks used by Santa Cruz is titled in the name of Corralitos.  Santa Cruz pays the monthly payments on all Corralitos loans used to purchase that equipment.

Case: 15-51771    Doc# 13    Filed: 05/27/15    Entered: 05/27/15 16:48:14    Page 15 of 36

11.     Santa Cruz and Corralitos are joint borrowers/obligors on a senior secured Promissory Note to California Coastal Rural Development Corporation (**"Cal Coastal"**) for an approximate $1.2 million amended and restated renewable term loan originally dated March 14, 2001, (as amended, renewed, modified and supplemented) (the **"Senior Facility"**), whereby both companies gave Cal Coastal a senior priority lien on all assets of both Debtors, including real and personal property, farming and transportation equipment, and growing crops, as evidenced by financing statements filed with the Secretary of State. As of the commencement of the cases, the Debtors owed approximately $1,217,421.11 to Cal Coastal.

12.     Santa Cruz and Corralitos are also joint/borrowers/obligors on a series of promissory notes and security agreements in favor of Tom Lange Company, Inc. (*aka* Lange Trading Company, Inc. and Tom Lange Company International, Inc.) (collectively **"Lange"**). The first promissory note and security agreement was executed on or about April 14, 2003 and the most recent one was executed on or about February 13, 2014. The Debtors gave Lange a junior priority lien on all assets of both Debtors, including real and personal property, farming and transportation equipment, and growing crops, as evidenced by financing statements filed with the Secretary of State. As of the commencement of the cases, the Debtors allegedly owed approximately $2,296,325.00 to Lange, although Lange has not given us any sort of accounting of the money it has loaned to the companies and the amount of payments on the loans.

13.     My brothers and I have executed personal guarantees of the Lange promissory notes.

14.     Lange served as the Debtor's exclusive marketing agent from January 1, 2011 to May 22, 2015, pursuant to a written "Marketing Agreement." Under the terms of that agreement, Lange agreed to sell 100% of Debtors' fruit and to pay Debtors the full market price less a 6.5% sales commission. The agreements was drafted by Lange's attorneys and it allowed Lange to make whatever pricing adjustments it, in its sole discretion, felt were necessary. In essence, Lange could and in fact did, arbitrarily make adjustments that had the effect of "selling" our fruit for less than $0, thereby depriving Debtors of any sales proceeds from the sale of their products. On such

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

Case: 15-51771    Doc# 13    Filed: 05/27/15    Entered: 05/27/15 16:48:14    Page 16 of 36
1366-007; 38717

shipments where Lange "back charged" the company more than what the fruit was supposed to be sold for, it even charged Debtors a 6.5% commission on the original market price. From 2012 through and including 2014, Lange made adjustments totaling in excess of $2.6 million, none of which were properly documented or justified.

15. In addition to Lange's practice of selling Debtors' fruit for less than $0, Lange also arbitrarily and without authorization, simply deducted monies to make loan payments it claimed were owed from the sale proceeds Lange generated by selling Debtors' fruit. What Lange didn't take with its left hand, it took with its right, leaving Debtor without adequate working capital to even pay its workers who harvested the fruit.

16. In 2012, I was diagnosed with leukemia. For the past two and a half years, I have undergone cancer treatment at Stanford Hospital. Because of my illness, I was unable to work for much of that time and my ability to oversee Santa Cruz' operations and Lange's activities as our agent was limited. It was during this time that Lange started deducting huge sums as "adjustments" but they did not provide us with any evidence that the fruit was in any way unsaleable or otherwise defective.

17. While the Lange marketing agreement states that it can make such adjustments in its sole and absolute discretion, I am informed and believe and thereon allege that USDA regulations, as expressed in decision of at least one administrative law judge, require that a grower's agent provide evidence in the form of a USDA inspection report or forfeit any unsubstantiated adjustment, regardless of the language in the agreement.

18. Because I don't believe Lange acted properly or within its rights when it deducted loan payments and made adjustments resulting in 100% of the company's sales to go to Lange, I caused the Debtors to retain Polis & Associates, APLC as special litigation counsel to file an adversary action against Lange, to among other things, recover the monies Lange paid itself out of the sales proceeds Lange controlled as grower's agent as well as recover the monies Lange deducted from the sales proceeds for what I believe to be improper and unauthorized adjustments.

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

19.     In the last few months, Lange had tried to force me to sign a new marketing agreement, a new security agreement, a new promissory note and a forbearance agreement in exchange for the possibility of new working capital loans.  However, I am informed and believe that the true purpose of these new agreements is to release Lange from liability concerning the improper adjustments and loan deductions.  In connection with these high-pressure tactics, Lange called me and my right hand man constantly and demanded that I sign the documents by arbitrary deadlines or face financial ruin.  Lange insisted that I assign to it a portion of a $4 million life insurance policy I own as additional security for its loans.  This is in addition to a $4 million life insurance policy Lange purchased on my life when I was diagnosed with leukemia.

20.     I have received many phone calls in the last few weeks telling me that Lange has contacted companies Santa Cruz does business with, in many cases threatening legal action if those companies assist us in selling fruit Lange has been unable or unwilling to sell, despite its obligation to sell 100% of Santa Cruz' strawberries.

21.     The day after Santa Cruz and Corralitos filed their petitions under Chapter 11, I received a phone call from one critical vendor stating that he had been contacted by one of Lange's lawyers.  According to this critical vendor, a potential replacement for Lange as grower's agent, Lange's lawyer threatened to sue the vendor if it made any attempt to sell our fruit or pay any monies to Santa Cruz.

22.     It appears to me that Lange and its lawyers are trying to scare away all potential agents and/or lenders to force me to give Lange a new marketing agreement and release it from all of its prior bad acts.

23.     By acting as marketing agent and lender, Lange completely controlled the Debtors' businesses.  The Debtors were completely dependent on Lange's payments to fund their operations.  When Lange deducted loan payments or adjustments equal to 100% of our sales, it left the companies without any money to pay workers, leases or materials and forced me to seek additional loans from Lange to keep the doors open.  I am informed and believe and thereon allege that the value of Debtors' claims against Lange are in excess of $3.9 million, however, it is

- 5 -

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

Case: 15-51771    Doc# 13    Filed: 05/27/15    Entered: 05/27/15 16:48:14    Page 18 of 36

difficult to pin down the number because Lange never provided the companies with the documents necessary to establish the precise amount.

24.     Thankfully, I am in remission and able to re-engage in the business.  I have carefully prepared a budget for the balance of the 2015 crop season and the 2016 crop season.  I did so by reference to the Debtors' historical financial results, current market conditions and factors, the fact that our strawberries are favored in the market and certified organic berries fetch a large premium compared to conventional.  I believe the budget is reasonable and in fact conservative given my 20 years as a strawberry farmer.  Attached hereto as **Exhibit "A"** and incorporated by reference herein is a true and correct copy of the 2015 crop season budget from June 1, 2015 through November 30, 2015.  Attached hereto as **Exhibit "B"** and incorporated by reference herein is a true and correct copy of the 2016 crop season budget from December 1, 2015 through November 30, 2016.

25.     If the Debtors cannot use the cash generated by the sale of Santa Cruz' strawberries, we will be unable to operate for more than a week or so.  If we can't sell our berries and get paid, we have no source of funds to pay our hourly workers to grow and harvest the fruit, or to pack and ship the boxes of strawberries.  We will be unable to pay our salaried staff of five to issue payroll checks, pay bills and operate the business.  Our workers will have no choice but to find other jobs, which will leave the fruit in the fields to rot and the business will cease to operate almost immediately.

26.     What concerns me most is Lange's recent efforts to discourage other grower's agents from doing business with the company.  Grower's agents are a necessity because Debtors have no way to sell the fruit without them.  Grower's agents frequently have access to land on which Santa Cruz can grow fruit.  They also frequently are sources of working capital loans.  By calling its competitors and threatening them with legal action, as I'm told Lange has done, it effectively leaves us nowhere to turn and forces us back into the clutches of Lange, the cause of so many of the Debtors' problems the last three years.

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

27.     If allowed to use the cash collateral, I am certain that we can achieve the results depicted in the attached budgets, thereby generating enough cash flow to pay our bills as they come due and invest in the 2016 crop when the time comes.  It will also allow us to work with our attorneys and accountants, our creditors and potential vendors, to structure a plan of reorganization that will provide the maximum recovery for the Debtors' unsecured creditors and that protects the legitimate interests of our secured creditors.  Most importantly, allowing the company to use the cash collateral will protect the 150 jobs as well as the additional 150 jobs that will be created as the season ramps up.  In a challenging labor market, 150-300 jobs makes a big difference and I am committed to do everything I can to save the companies, protect the workers' jobs, and protect the creditors.

I declare under the penalty of perjury that the above is true and correct.  Signed May 27 , 2015 at Watsonville, California.

/s/  Robert Koontz
_____
Robert Fritz Koontz

Case: 15-51771    Doc# 13    Filed: 05/27/15    Entered: 05/27/15 16:48:14    Page 20 of 36

## **DECLARATION OF THOMAS A. VOGELE, ESQ.**

I, THOMAS A. VOGELE declare as follows:

1. I am an attorney duly licensed to practice law before all the courts of the State of California and all U.S. District and Bankruptcy Courts for the Central, Southern, Northern and Eastern Districts for the State of California, the U.S. Court of Appeals for the Ninth Circuit and the Bankruptcy Appellate Panel for the Ninth Circuit.  I am the founder and a principal of Thomas Vogele & Associates, APC (**"TVA"**), proposed general insolvency counsel for Santa Cruz Berry Farming Company, LLC and Corralitos Farms, LLC (collectively **"Debtors"**).

2. I submit this supplemental declaration in support of Debtors' emergency motion for an order approving the use cash collateral, granting adequate protection for use thereof, and scheduling a final hearing (the **"Motion"**).  I have personal knowledge of all facts stated in this declaration except those stated on information and belief and as to those, I believe them to be true based on my personal investigation.  If called to do so, I could and would testify fully as stated herein.  I do not intend to waive attorney-client privilege by submitting this declaration.

3. My firm was retained by Debtors in late April of 2015 to advise them regarding restructuring options and possibly filing a petition under Chapter11 of the U. S, Bankruptcy Code. In that regard, the Debtors' authorized me to file Chapter 11 petitions on their behalf and I caused such filings on May 25, 2015.

4. On May 26, 2015, I called the chambers of Hon. M. Elaine Hammond and inquired about calendaring an emergency motion to use cash collateral and spoke to Steve Nunes.  Mr. Nunes informed me that it would be possible to calendar such a motion on shortened time for Friday, May 29, 2015 at 11:00 A.M.

5. I gave notice by email and fax on May 27, 2015 to all secured creditors, specifically Tom Lange Company, Inc. (**"Lange"**) through its attorney, William S. Brody of Buchalter Nemer, LLP, and California Coastal Rural Development Corporation (**"Cal Coastal"**) through its agent, Jose Guerra in Salinas, California.

- 1 -

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

1    6.    I am aware that the Debtors have retained Polis & Associates, APLC to serve as

2  proposed special litigation counsel.  I have spoken with Thomas J. Polis about the nature of claims

3  Debtors intend to assert against Lange and believe them to have merit based on my conversations

4  with Debtors' management employees and a review of the documentary evidence provided to me

5  by Debtors.

6    7.    I conducted a UCC-1 search through Westlaw Public Records and determined that

7  Cal Coastal's UCC-1 financing statement was first recorded on or about March 29, 2002 as

8  document #0209260260.  I also determined that Lange's UCC-1 financing statement was first

9  recorded on or about May 2, 2003 as document #0312560476.  According to the public record

10 search I conducted, both secured creditors have filed amendments renewing their financing

11 statements prior to expiration.

12    I declare under the penalty of perjury that the above is true and correct.  Signed May __27__,

13 2015 at Carmel, California.

14                                        /s/  Thomas Vogele
                                         _____
15                                            Thomas A. Vogele

EXHIBIT A

# Santa Cruz Berry Farming Company, LLC
## 2015/2016 Budget Forecast - Normal

## Assumptions:

| 210 Acres | May | June | July | Aug | Sept | Oct | Nov | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Trays | 30,000 | 217,000 | 217,000 | 180,600 | 212,850 | 139,750 | 47,300 | 1,044,500 |
| Target Price/Box | 12.00 | 12.00 | 12.00 | 12.25 | 12.75 | 15.25 | 20.00 | |

## Estimated 2015/2016 Income & Expenses (2015 Crop)

| Income | 5/25/2015 - 5/31/15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Sales/Sources | 360,000 | 2,604,000 | 2,604,000 | 2,212,350 | 2,713,838 | 2,131,188 | 946,000 | - | - | - | - | 13,571,375 |
| Freezer | - | - | - | - | - | 604,000 | - | - | - | - | - | 604,000 |
| Organic Juice | - | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | - | - | - | - | - | 500,000 |
| Less: Ranch Payroll | 180,000 | 364,780 | 561,200 | 701,500 | 757,620 | 757,620 | 280,600 | - | - | - | - | 3,603,320 |
| Plus: Fed Taxes 7.65% | 13,770 | 27,906 | 42,932 | 53,665 | 57,958 | 57,958 | 21,466 | - | - | - | - | 275,654 |
| Plus: State Taxes 4.4% | 8,334 | 16,889 | 25,984 | 32,479 | 35,078 | 35,078 | 12,992 | - | - | - | - | 166,834 |
| Total Payroll Due | 202,104 | 409,575 | 630,115 | 787,644 | 850,656 | 850,656 | 315,058 | - | - | - | - | 4,045,808 |
| Cash from Operations | 157,896 | 2,194,425 | 1,973,885 | 1,424,706 | 1,863,182 | 1,280,532 | 630,942 | - | - | - | - | 9,525,567 |
| Expenses | | | | | | | | | | | | |
| Overhead | | | | | | | | | | | | - |
| Automotive DMV | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 11,517 |
| Advertising & Promotion | - | 250 | - | 250 | - | 250 | - | 250 | - | 250 | - | 1,250 |
| Bank Charges | 830 | 830 | 830 | 830 | 830 | 830 | 830 | 830 | 830 | 830 | 830 | 9,130 |
| Chemicals | 15,821 | 31,642 | 31,642 | 31,642 | 31,642 | - | - | - | 31,642 | 31,642 | 31,642 | 237,315 |
| Computer Expenses | 284 | 284 | 284 | 284 | 284 | 284 | 284 | 284 | 284 | 284 | 284 | 2,840 |
| Consulting Fees | - | 2,493 | 2,493 | 2,493 | 2,493 | 2,493 | - | - | 2,493 | 2,493 | 2,493 | 19,944 |
| Donations | . | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 550 |
| EDD Payment (PP) | - | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 35,000 |
| Education Training | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 4,466 |
| Equipment Rental | - | - | - | - | 12,000 | 12,000 | - | - | - | - | - | 24,000 |
| Fabrication | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 5,500 |

# Santa Cruz Berry Farming Company, LLC
## 2015/2016 Budget Forecast - Normal

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Farm Supplies | - | 2,500 | - | 2,600 | - | 3,500 | - | - | 1,500 | 1,500 | - | 11,600 |
| Fed Tax Work Out (PP) | - | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 36,000 |
| Fertilizers | 19,830 | 39,660 | 39,660 | 39,660 | 39,660 | 18,000 | - | - | - | - | - | 196,470 |
| Fuel | 10,251 | 20,501 | 20,501 | 20,501 | 20,501 | 20,501 | 20,501 | 20,501 | | - | - | 153,758 |
| Insurance | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 30,602 |
| Interest/Finance Chgs | - | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 138,910 |
| Irrigation | - | - | - | 95,000 | - | - | - | - | - | - | - | 95,000 |
| Land Rent | - | 180,000 | 160,000 | 35,000 | - | - | 152,000 | 35,000 | 160,000 | - | - | 722,000 |
| Late Chgs/Penalties | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 19,448 |
| Marketing Asessments/MOA | - | - | - | 23,659 | - | - | - | 23,659 | - | - | - | 47,318 |
| Meals Entertainment | - | - | 2,393 | - | - | - | - | - | - | - | 2,393 | 4,786 |
| Office Expenses | - | 1,837 | ` | 1,837 | 1,837 | 1,837 | 1,837 | 1,837 | 1,837 | 1,837 | 1,837 | 16,533 |
| Organic Certifications | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 4,213 |
| Per Diem | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,100 |
| Persimilis (organic pest control) | - | 28,000 | 28,000 | - | - | - | - | - | - | - | - | 56,000 |
| Postage | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,500 |
| Property Taxes, Licenses, Fees | - | - | - | - | - | - | - | 48,000 | - | - | - | 48,000 |
| Legal & Accounting | - | 50,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 275,000 |
| PVWMA (Post) - New | 4,000 | 16,000 | 16,000 | 16,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 122,000 |
| PVWMA (Pre) - Old | - | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | | 90,000 |
| Repairs and maintenance | 3,724 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 164,964 |
| Salaries | 23,272 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 527,102 |
| Sanitation | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 33,781 |
| Shop/Office Rent | - | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 69,400 |
| Software Support | - | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 25,340 |
| Telephone | - | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 28,770 |
| Third Party Audits | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | - | - | 2,700 |
| Transportation Expenses | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 4,565 |
| Travel Expenses | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,100 |

# Santa Cruz Berry Farming Company, LLC
## 2015/2016 Budget Forecast - Normal

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Utilities | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 62,095 |
| Workers Comp Insurance | 38,944 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 195,464 |
| Total Overhead | 133,622 | 525,001 | 477,807 | 445,760 | 295,251 | 245,699 | 361,433 | 316,365 | 384,590 | 224,540 | 215,183 | 3,625,274 |
| Net Cash Flow | 24,274 | 1,669,424 | 1,496,078 | 978,946 | 1,567,931 | 1,034,833 | 269,486 | (316,365) | (384,590) | (224,540) | (215,183) | 5,900,293 |
| Cumulative Cash Flow | 24,274 | 1,693,698 | 3,189,776 | 4,168,722 | 5,736,652 | 6,771,485 | 7,040,971 | 6,724,606 | 6,340,016 | 6,115,476 | 5,900,293 | |

Pre-Petition debts to address:

Property Taxes - $48,000

Packard lease - $152,000

Trafton lease - $107,750

## 2016 Crop Investment

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ranch Payroll | - | - | - | - | - | - | - | 280,600 | 140,300 | 140,300 | 280,600 | 841,800 |
| Plus: Fed Taxes 7.65% | - | - | - | - | - | - | - | 21,466 | 10,733 | 10,733 | 21,466 | 64,398 |
| Plus: State Taxes 4.4% | - | - | - | - | - | - | - | 12,992 | 6,496 | 6,496 | 12,992 | 38,975 |
| Total Payroll Due | - | - | - | - | - | - | - | 315,058 | 157,529 | 157,529 | 315,058 | 945,173 |
| Fuel | - | - | - | - | - | - | - | - | 20,501 | 20,501 | 20,501 | 61,503 |
| Fumigation | - | - | - | - | 800,000 | - | - | - | - | - | - | 800,000 |
| Fencing (All) | - | - | - | - | - | - | - | - | - | - | 30,000 | 30,000 |
| Fertilizers | - | - | - | - | - | - | - | - | 39,660 | 39,660 | 39,660 | 118,980 |
| Ground Prep | - | - | 36,000 | 50,000 | 50,000 | - | - | - | - | - | - | 136,000 |
| Plants | - | - | - | 200,000 | 290,000 | - | - | - | - | - | - | 490,000 |
| Plastic/Mulch/Drip Tape/Pins | - | - | - | 100,000 | 100,000 | - | - | - | - | - | - | 200,000 |
| Persimilis (bugs) | - | - | - | - | - | - | - | - | - | - | 28,000 | 28,000 |
| Total 2016 Crop Investment | - | - | 36,000 | 350,000 | 1,240,000 | - | - | 315,058 | 217,690 | 217,690 | 433,219 | 2,809,656 |
| Total Cash Flow | 24,274 | 1,669,424 | 1,460,078 | 628,946 | 327,931 | 1,034,833 | 269,486 | (631,423) | (602,280) | (442,230) | (648,402) | 3,090,637 |
| Total Cum. Cash Flow | 24,274 | 1,693,698 | 3,153,776 | 3,782,722 | 4,110,652 | 5,145,485 | 5,414,971 | 4,783,549 | 4,181,269 | 3,739,039 | 3,090,637 | |

Case: 15-51771   Doc# 13   Filed: 05/27/15   Entered: 05/27/15 16:48:14   Page 26 of 36

EXHIBIT B

## Santa Cruz Berry Farming Company, LLC
### 2016/2017 Budget Forecast

### Assumptions:

| 210 Acres | April | May | June | July | Aug | Sept | Oct | Nov | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| Trays | 30,000 | 37,000 | 217,000 | 217,000 | 180,600 | 212,850 | 139,750 | 47,300 | 1,081,500 |
| Target Price/Box | 12.00 | 12.00 | 12.00 | 12.00 | 12.25 | 12.75 | 15.25 | 20.00 | |

## Estimated 2016/2017 Income & Expenses (2016 Crop)

| Income | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 | Jan-17 | Feb-17 | Mar-17 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Sales/Sources | 360,000 | 444,000 | 2,604,000 | 2,604,000 | 2,212,350 | 2,713,838 | 2,131,188 | 946,000 | - | - | - | - | 14,015,375 |
| Freezer | - | - | - | - | - | - | 600,000 | - | - | - | - | - | 600,000 |
| Organic Juice | - | - | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | - | - | - | - | - | 500,000 |
| Less: Ranch Payroll | 250,000 | 300,000 | 350,000 | 500,000 | 600,000 | 750,000 | 600,000 | 250,000 | - | - | - | - | 3,600,000 |
| Plus: Fed Taxes 7.65% | 19,125 | 22,950 | 26,775 | 38,250 | 45,900 | 57,375 | 45,900 | 19,125 | - | - | - | - | 275,400 |
| Plus: State Taxes 4.4% | 11,575 | 13,890 | 16,205 | 23,150 | 27,780 | 34,725 | 27,780 | 11,575 | - | - | - | - | 166,680 |
| Total Payroll Due | 280,700 | 336,840 | 392,980 | 561,400 | 673,680 | 842,100 | 673,680 | 280,700 | - | - | - | - | 4,042,080 |
| Cash from Operations | 79,300 | 107,160 | 2,211,020 | 2,042,600 | 1,538,670 | 1,871,738 | 1,457,508 | 665,300 | - | - | - | - | 9,973,295 |
| Expenses (2016 Crop) | | | | | | | | | | | | | |
| Overhead | | | | | | | | | | | | | |
| Automotive DMV | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | 12,564 |
| Advertising & Promotion | 250 | - | 250 | - | 250 | - | 250 | - | 250 | - | 250 | - | 1,500 |
| Bank Charges | 830 | 830 | 830 | 830 | 830 | 830 | 830 | 830 | 830 | 830 | 830 | 830 | 9,960 |
| Chemicals | 31,642 | 31,642 | 31,642 | 31,642 | 31,642 | 31,642 | - | - | - | 31,642 | 31,642 | 31,642 | 284,778 |
| Computer Expenses | 284 | 284 | 284 | 284 | 284 | 284 | 284 | 284 | 284 | 284 | 284 | 284 | 3,408 |
| Consulting Fees | 2,493 | 2,493 | 2,493 | 2,493 | 2,493 | 2,493 | 2,493 | - | - | 2,493 | 2,493 | 2,493 | 24,930 |
| Donations | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 660 |
| EDD Payment (PP) | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 |
| Education Training | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 4,872 |
| Equipment Rental | - | - | - | - | - | 12,000 | 12,000 | - | - | - | - | - | 24,000 |
| Fabrication | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| Farm Supplies | 2,500 | - | 2,500 | - | 2,600 | - | 3,500 | - | - | 1,500 | 1,500 | - | 14,100 |
| Fed Tax Work Out (PP) | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 43,200 |
| Fertilizers | 39,660 | 39,660 | 39,660 | 39,660 | 39,660 | 39,660 | 18,000 | - | - | - | - | - | 255,960 |
| Fuel | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | - | - | - | 180,000 |
| Insurance | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | 33,384 |
| Interest/Finance Chgs | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 13,891 | 166,692 |

| | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Irrigation | - | - | - | - | 95,000 | - | - | - | - | - | - | - | 95,000 |
| Land Rent | - | 152,000 | 180,000 | 160,000 | 35,000 | - | - | 152,000 | 35,000 | 160,000 | - | - | 874,000 |
| Late Chgs/Penalties | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 1,768 | 21,216 |
| Marketing Asessments/MOA | - | - | - | - | 23,659 | - | - | - | 23,659 | - | - | - | 47,318 |
| Meals Entertainment | - | 2,393 | - | 2,393 | - | - | - | - | - | - | - | 2,393 | 7,179 |
| Office Expenses | 1,837 | 1,837 | 1,837 | | 1,837 | 1,837 | 1,837 | 1,837 | 1,837 | 1,837 | 1,837 | 1,837 | 20,207 |
| Organic Certifications | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 383 | 4,596 |
| Per Diem | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Persimilis (bugs) | 28,000 | - | - | - | - | - | - | - | - | - | - | - | 28,000 |
| Postage | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Property Taxes, Licenses, Fees | 48,000 | - | - | - | - | - | - | - | 48,000 | - | - | - | 96,000 |
| Legal & Accounting | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| PVWMA | 8,000 | 8,000 | 16,000 | 16,000 | 16,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 120,000 |
| Repairs and maintenance | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 16,124 | 193,488 |
| Salaries | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 50,383 | 604,596 |
| Sanitation | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 3,071 | 36,852 |
| Shop/Office Rent | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 83,280 |
| Software Support | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 30,408 |
| Telephone | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 34,524 |
| Third Party Audits | - | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | - | - | 2,700 |
| Transportation Expenses | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 4,980 |
| Travel Expenses | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Utilities | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 67,740 |
| Workers Comp Insurance | 24,433 | 63,377 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 332,140 |
| Total Overhead | 334,200 | 449,087 | 446,500 | 424,306 | 420,259 | 267,750 | 218,198 | 333,955 | 288,864 | 357,590 | 197,540 | 198,183 | 3,936,432 |
| Net Cash Flow | (254,900) | (341,927) | 1,764,520 | 1,618,294 | 1,118,411 | 1,603,988 | 1,239,310 | 331,345 | (288,864) | (357,590) | (197,540) | (198,183) | 6,036,863 |
| Cumulative Cash Flow | (254,900) | (596,827) | 1,167,693 | 2,785,987 | 3,904,398 | 5,508,386 | 6,747,695 | 7,079,040 | 6,790,176 | 6,432,586 | 6,235,046 | 6,036,863 | |

## 2017 Crop Investment

| | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ranch Payroll | - | - | - | - | - | - | - | - | 250,000 | 120,000 | 120,000 | 250,000 | 740,000 |
| Plus: Fed Taxes 7.65% | - | - | - | - | - | - | - | - | 19,125 | 9,180 | 9,180 | 19,125 | 56,610 |
| Plus: State Taxes 4.4% | - | - | - | - | - | - | - | - | 11,575 | 5,556 | 5,556 | 11,575 | 34,262 |
| Total Payroll Due | - | - | - | - | - | - | - | - | 280,700 | 134,736 | 134,736 | 280,700 | 830,872 |
| Fuel | - | - | - | - | - | - | - | - | - | 20,000 | 20,000 | 20,000 | 60,000 |

## Santa Cruz Berry Farming Company, LLC
### 2016/2017 Budget Forecast

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fumigation | - | - | - | - | - | 800,000 | - | - | - | - | - | - | 800,000 |
| Fertilizers | - | - | - | - | - | - | - | - | - | 39,660 | 39,660 | 39,660 | 118,980 |
| Ground Prep | - | - | - | 36,000 | 50,000 | 50,000 | - | - | - | - | - | - | 136,000 |
| Plants | - | - | - | - | 200,000 | 290,000 | - | - | - | - | - | - | 490,000 |
| Plastic/Mulch/Drip Tape/Pins | - | - | - | - | 100,000 | 100,000 | - | - | - | - | - | - | 200,000 |
| Organic Certifications | - | - | - | - | - | - | - | 383 | 383 | 383 | 383 | 383 | 1,915 |
| Persimilis (organic pest control) | - | - | - | - | - | - | - | - | - | - | - | 28,000 | 28,000 |
| Total 2017 Crop Investment | - | - | - | 36,000 | 350,000 | 1,240,000 | - | 383 | 281,083 | 194,779 | 194,779 | 368,743 | 2,665,767 |
| Total Cash Flow | (254,900) | (341,927) | 1,764,520 | 1,582,294 | 768,411 | 363,988 | 1,239,310 | 330,962 | (569,947) | (552,369) | (392,319) | (566,926) | 3,371,096 |
| Total Cum. Cash Flow | (254,900) | (596,827) | 1,167,693 | 2,749,987 | 3,518,398 | 3,882,386 | 5,121,695 | 5,452,657 | 4,882,710 | 4,330,341 | 3,938,022 | 3,371,096 | |

| In re: SANTA CRUZ FARMING COMPANY, LLC | CHAPTER: 11 |
| Debtor(s). | CASE NUMBER: 15-51771 |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**3199 Airport Loop Drive, Suite A3, Costa Mesa, California 92626**

A true and correct copy of the foregoing document described **EMERGENCY MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL; DECLARATION OF ROBERT KOONTZ AND THOMAS VOGELE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On *5/27/2015* I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- United States Trustee (SJ) USTPRegion17.SJ.ECF@usdoj.gov, ltroxas@hotmail.com
- Thomas A Vogele on behalf of Debtor tvogele@tvalaw.com
- Effie F. Anastassiou on behalf of Creditor K&M Enterprises, LLC effieesq@salinasaglaw.com; paralegal@salinasaglaw.com

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On *5/27/2015* I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *5/27/2015,* I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 5/27/15 | | /s/ Angela Brown |
| --- | --- | --- |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                 **F 9013-3.1.PROOF.SERVICE**

Case: 15-51771    Doc# 13    Filed: 05/27/15    Entered: 05/27/15 16:48:14    Page 31 of 36

| In re: SANTA CRUZ FARMING COMPANY, LLC | CHAPTER: 11 |
| Debtor(s). | |
| | CASE NUMBER: 15-51771 |

**VIA OVERNITE EXPRESS**
Judge M. Elaine Hammond
United States Bankruptcy Court
Northern District of California
United States Courthouse, Room 3035
280 South First Street
San Jose, CA 95113-3099

**VIA US MAIL**
UNITED STATES TRUSTEE (SJ)
80 S 1st St #268
San Jose, CA 95113

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                    **F 9013-3.1.PROOF.SERVICE**

Case: 15-51771    Doc# 13    Filed: 05/27/15    Entered: 05/27/15 16:48:14    Page 32 of 36

**SANTA CRUZ BERRY FARMING COMPANY, LLC AND CORRALITOS FARMS, LLC.**

**CONSOLIDATED MASTER SERVICE LIST**

<u>DEBTORS</u>
Santa Cruz Berry Farming Company, LLC
Corralitos Farms, LLC
116 Martinelli Street
Watsonville, CA 95077
Attn: Robert Fritz Koontz (fritzkoontz@yahoo.com)
Attn: Bradley E. Smith (bsmith@santacruzberry.com)

<u>ATTORNEYS FOR THE DEBTORS</u>

<u>General Insolvency Counsel</u>
Thomas Vogele & Associates, APC
Thomas A, Vogele, Esq. (tvogele@tvalaw.com)
Brendan M. Loper, Esq. (bloper@tvalaw.com)
3199 Airport Loop Drive, Suite A3
Costa Mesa, California 92626

<u>Special Litigation Counsel</u>
Polis & Associates, APLC
Thomas J. Polis, Esq. (tom@polis-law.com)
Newport Gateway
19800 MacArthur Blvd., Suite 1000
Irvine, California 92612

<u>UNITED STATES TRUSTEE</u>
Office of the U.S. Trustee
280 South First Street, Room 268
San Jose, California 95113

<u>GOVERNMENTAL ENTITIES</u>
Internal Revenue Service
Department of the Treasury
Ogden, UT 84201-0005

U.S. Attorney's Office
Heritage Bank Building
150 Almaden Blvd. Suite 900
San Jose, CA 95113

NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL

1366-007; 38717

Employment Development Dept.
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

EDD
Bay Area Collection Office
7677 Oakport Street, Suite 400
Oakland, CA 94621-1933

SECURED CREDITORS[3]

California Coastal Rural Development Corporation
221 Main Street, Suite 301
Salinas, CA 93901

Tom Lange Company, Inc.
Tom Lange Company International, Inc.
5231 South 6th St Road
Springfield, IL 62701

Buchalter Nemer, LLP (Attorneys for Lange companies)
1000 Wilshire Blvd., Suite 1500
Los Angeles, California 90017-1730
William S. Brody, Esq. (wbrody@buchalter.com)

---

[3] Debtors expressly reserve all rights with respect to classification of creditor claims.

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

<u>LARGEST 30 UNSECURED CREDITORS</u>
(Consolidated Cases)

American Portable Restrooms
151 Kearney Street
Watsonville, CA 95076

G&H Farms, LLC
PO BOX 599
Salinas, CA 93902

Armando Ramirez
287 Carsserly Rod
Watsonville, CA 95076

Industrias de Culiacan SA de CV
Federalismo S/N Las Flores Infonavit
Culiacan
Sinaloa, Mexico CP 80159

Berkshire Hathaway Homestate Co.
PO BOX 846693
Los Angeles, CA 90084-6693

Julie Packard & Nancy Burnett
6551 Glen Haven Road
Soquel, CA 95073

Beth Crandall
PO BOX 1287
Watsonville, CA 95077

K&M Enterprises, LLC
PO BOX 1464
Watsonville, CA 95077

Boyer, Inc.
PO BOX 82
Watsonville, CA 95077

Kanaka Peak Service
PO BOX 1287
Watsonville, CA 95077

Comercia Bank
PO BOX 790408
Saint Louis, MO 63179-0408

Lassen Canyon Nursery, Inc.
PO BOX 992400
Redding, CA 96099-2400

Comerica Bank
Watsonville Square Shopping Center
1998 Main St
Watsonville, CA 95076

Norcal Nursery
PO BOX 1012
Red Bluff, CA 96080

Crown Nursery, LLC
PO BOX 340
Red Bluff, CA 96080-0340

Pacific Ag Rental
820 Park Row #686
Salinas, CA 93901

Cypress Ag Consulting
PO BOX 3597
Freedom, CA 95019

Pajaro Valley Laser Leveling, Inc.
577 Judd Road
Watsonville, CA 95076

Douglas Brouwer
363 Berkley Way
Santa Cruz, CA 95062

PV Water Management Agency
36 Brennan Street
Watsonville, CA 95076

Duran Sales
135 Allison Street
Royal Oaks, CA 95076

RDO Equipment Co.
10108 Riverford Road
Lakeside, CA 92040

FMG Farm Contractor, Inc.
PO BOX 1582
Gonzales, CA 93926

Richard Jon Gurnee, Switzer Trust,
Etheleen Callender Trust
724 Brewington Avenue
Watsonville, CA 95076

- 1 -

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717

Robert Stephens
PO BOX 874
Soquel, CA 95073

Sturdy Oil Company
PO BOX 90
Salinas, CA 93902-0090

Rocha JR Berry Farms, LLC
PO BOX 1360
Watsonville, CA 95076

U.S. Irrigation
3876 Old Allen Road
Bakersfield, CA 93314

Sambrailo Packaging
PO BOX 50090
Watsonville, CA 95077

Zenith Insurance Company
File 50004
Los Angeles, CA 90074-0004

Sierra Cascade Nursery
472-715 Johnson Road
Susanville, CA 96130

EQUITY HOLDERS OF SANTA CRUZ BERRY FARMING COMPANY, LLC (over 5%)

Robert Fritz Koontz
29 Prendergast Lane
Watsonville, CA 95076

Andrew Koontz
8038 S. 174th Street
Higley, Arizona 85236

EQUITY HOLDERS OF CORRALITOS FARMS, LLC (over 5%)

Robert Fritz Koontz
29 Prendergast Lane
Watsonville, CA 95076

Andrew Koontz
8038 S. 174th Street
Higley, Arizona 85236

Rodney Koontz
111 South 34th Street
Phoenix, Arizona 85034

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL**

1366-007; 38717