WILLIAM S. BRODY (SBN: 136136)
JOSEPH M. WELCH (SBN: 259308)
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017
Telephone: (213) 891-0700
Fax: (213) 896-0400
Email: wbrody@buchalter.com, jwelch@buch

Attorneys for Secured Creditors
Tom Lange Company, Inc. and
Tom Lange Company International, Inc.

The following constitutes
the order of the court. Signed August 10, 2015

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>SANTA CRUZ BERRY FARMING COMPANY, LLC, a California limited liability company,<br><br>Debtor. | Case No. 15-51771 MEH<br><br>Chapter 11<br><br>**ORDER APPROVING STIPULATION AND GRANTING MOTION FOR (I) ORDER APPROVING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) SCHEDULING FINAL HEARING – ON AN INTERIM AND LIMITED BASIS THROUGH SEPTEMBER 30, 2015**<br><br>Date: August 13, 2015<br>Time: 2:00 p.m.<br>Place: United States Courthouse<br>       Courtroom 3070<br>       280 South First Street<br>       San Jose, CA 95113-3099 |

The Court having considered the Stipulation Re Order Granting Emergency Motion for (I) Order Approving Use of Cash Collateral (II) Granting Adequate Protection, and (III) Scheduling Final Hearing – On an Interim and Limited Basis Through August 13, 2015 [Docket No. 102] (the "Stipulation") dated July 28, 2015, by and between Santa Cruz Berry Farming Company, LLC, the

debtor and debtor in possession (the "Debtor") in the above-captioned bankruptcy case (the "Case"), Tom Lange Company, Inc. and Tom Lange Company International, Inc. ("TLC"), California Coastal Rural Development Corporation ("CCRDC"), Del Mar Food Products, Inc. ("DMFP," and collectively with TLC, the "Secured Parties" and each a "Secured Party"), and the Official Committee of Unsecured Creditors (the "Committee," and collectively with Debtor and Secured Parties, the "Parties" and each a "Party"), the Motion for (I) Order Approving Use of Cash Collateral (II) Granting Adequate Protection, and (III) Scheduling Final Hearing (the "Motion"), and papers filed with the Court relating thereto, and for good cause, the Court finds and orders as follows:

**IT IS HEREBY FOUND** that:

A. <u>Bankruptcy</u>.

1. On May 25, 2015, Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the Case (the "Petition Date").

B. <u>Use of Cash Collateral</u>.

1. <u>Need for Use of Cash Collateral</u>. Debtor asserts that it has an immediate need to use Cash Collateral in order to continue its business operations and avoid immediate and irreparable harm.

2. <u>Adequate Protection</u>. The rents, issues, profits and proceeds (the "Cash Collateral") of the assets of Debtor's bankruptcy estate (the "Estate") existing as of the Petition Date (collectively with the Cash Collateral, the "Prepetition Collateral") constitutes "cash collateral" of TLC and certain other secured parties (collectively, the "Secured Parties") within the meaning of section 363(a) of the Bankruptcy Code, and pursuant to sections 361 and 363(e), the Secured Parties are entitled to adequate protection of their respective interests in the Collateral in connection with Debtor's use of the Cash Collateral. The provision of adequate protection as approved by this Order is without prejudice to any Secured Parties' rights with respect to whether such adequate protection provided constitutes sufficient "adequate protection" of such Secured Parties' interest in the Collateral within the meaning of section 361.

C. Prior Orders.

1. On May 29, 2015, the Court entered its Order Granting Emergency Motion for (I) Order Approving Use of Cash Collateral (II) Granting Adequate Protection, and (III) Scheduling Final Hearing – On an Interim and Limited Basis [Through June 5, 2015] [Docket No. 30].[1]

2. On June 5, 2015, the Court entered its Order (A) Approving Stipulation and (B) Granting Emergency Motion for (I) Order Approving Use of Cash Collateral (II) Granting Adequate Protection, and (III) Scheduling Final Hearing – On an Interim and Limited Basis Through June 12, 2015 [Docket No. 46].

3. On June 16, 2015, the Court entered its Order Approving (A) Stipulation No. 2 and (B) Granting Emergency Motion for (I) Order Approving Use of Cash Collateral (II) Granting Adequate Protection, and (III) Scheduling Final Hearing – On an Interim and Limited Basis Through June 23, 2015 [Docket No. 59].

4. On June 23, 2015, the Court entered its Order Approving (A) Stipulation No. 3 and (B) Granting Emergency Motion for (I) Order Approving Use of Cash Collateral (II) Granting Adequate Protection, and (III) Scheduling Final Hearing – On an Interim and Limited Basis Through July 9, 2015 [Docket No. 78].

5. On July 13, 2015, the Court entered its Order Approving (A) Stipulation No. 5 and (B) Granting Emergency Motion for (I) Order Approving Use of Cash Collateral (II) Granting Adequate Protection, and (III) Scheduling Final Hearing – On an Interim and Limited Basis Through August 13, 2015 [Docket No. 93]

Based upon the foregoing findings, the Court makes the following Order.

**IT IS HEREBY ORDERED** that:

SECTION 1. Authorization and Conditions to Use of Cash Collateral.

1.1 Stipulation. The Stipulation is approved.

---

[1] Defined terms herein that are not defined herein are used with the same sense and meaning as such terms are defined in the Prior Order.

1.2     Authorization to Use Cash Collateral.  Pursuant to the terms and conditions of this Order, Debtor is authorized to use the Cash Collateral, as follows:

1.2.1   Expiration Date.  Debtor is authorized to use Cash Collateral on a limited and emergency basis from August 13, 2015, through and including the earlier of (i) the date of an occurrence of an Event of Default as provided under section 5.2.2(a) of this Order, or (ii) September 30, 2015 (the "Use Period").

1.2.2   Budget.  Debtor is authorized to use Cash Collateral solely to pay only those certain expenses actually incurred during the Use Period pursuant to the budget attached hereto as Exhibit A (the "Budget").

1.2.3   Procedure for Use of Cash Collateral.  All Cash Collateral, now or hereafter in possession of Debtor and the Estate shall be deposited by Debtor in a segregated account (the "Designated Account") and shall be subject to Secured Parties' liens and security interests to the same extent, validity and priority that such liens and security interests exist as of the Petition Date.

SECTION 2.  Adequate Protection.

2.1     Postpetition Liens.

2.1.1   Postpetition Lien Granting.  Each Secured Party is granted by Debtor, effective as of the Petition Date, a "replacement lien" pursuant to sections 361 and 363(e) (a "Postpetition Lien") in all prepetition and postpetition assets in the Estate, whether tangible or intangible, whether by contract or operation of law, and including all Cash Collateral thereof (collectively, the "Postpetition Collateral," and collectively with the Prepetition Collateral, the "Collateral"), but not including claims or causes of action possessed by Debtor's bankruptcy estate under sections 544, 545, 547, 548, 553(b), or 723(b), and all proceeds therefrom.  The Postpetition Lien is only to the extent of any diminution in value of the Prepetition Collateral arising from the use of Cash Collateral.  The Postpetition Lien is subordinated to the compensation and expense reimbursement (excluding professional fees) of a superseding chapter 7 trustee in the Case.

2.1.2   Postpetition Lien Priority.  The Postpetition Lien in favor of each Secured Party is deemed to have the same extent, validity and priority as the Prepetition Lien in favor of such Secured Party, subject only to any lien or security interest that is valid, perfected and senior to

the interest of such Secured Party effective as of the Petition Date and not otherwise avoided and preserved under section 551.

        2.1.3    <u>Postpetition Lien Perfection</u>. This Order constitutes sufficient and conclusive evidence of the granting, attachment, priority, perfection, and validity of the Postpetition Lien, effective as of the date and time of entry of this Order, without any further act required under federal, state, or local law requiring notice, filing, registration, recording, possession or other act to validate or perfect a security interest or lien, including without limitation deposit account control agreements, merchant payment agreements, merchant payment direction letters, cash transport agreements, and such other agreements with any party possessing or asserting an interest in the Collateral (a "Perfection Act"). Notwithstanding the foregoing, if any Secured Party, in its sole discretion, elects to effectuate a Perfection Act, each Secured Party is authorized to perform such act, and if requested by a Secured Party, Debtor is authorized to perform such act to the extent necessary or required, and in such event, the subject filing or recording office or agency is authorized to accept, file, and/or record any document in regard to such act in accordance with applicable law. No defect or failure in connection with an attempt to perform a Perfection Act shall limit, waive, or alter the validity, enforceability, attachment, or perfection of the Postpetition Lien by virtue of entry of this Order.

    2.2    <u>Section 507(b) Priority</u>. Each Secured Party retains its rights under section 507(b).

    2.3    <u>Adequate Protection</u>. Entry of this Order does not affect the rights of any Secured Parties objecting to the use of the Cash Collateral or contesting the adequate protection provided pursuant to this Order as sufficient adequate protection of its interests.

SECTION 3. <u>Representations; Covenants; and Waivers</u>.

    3.1    <u>Reporting</u>. Debtor shall timely provide each Secured Party with (a) on a daily basis, information regarding the entities or persons to whom Debtor has sold or intends to sell or who Debtor is using or intends to use to sell and cool produce (separating "organic" and "conventional") and copies of any written agreements with such entities or persons or essential terms of any oral agreements with such entities or persons, (b) a report, in form and substance reasonably acceptable to the Secured Party receiving such report, detailing (i) on a daily basis, the

volume/quantity of produce (separating "organic" and "conventional") harvested and the deliveries or sales of such produce that occurred during the weekly period, (ii) on a daily basis, the entities or persons to whom Debtor has sold or who Debtor used to sell and cool produce, and the volume/quantity of such produce received by or sold to such entity or person, (iii) on a daily and weekly basis, the cash receipts from sales received during the applicable weekly period, (iv) on a weekly basis, the amount of cash in all bank accounts, and (v) on a bi-monthly basis, a schedule comparing actual collections and expenditures (by expense category) on a cash basis to the anticipated income and expenses set forth in the Budget for each week ending on Friday (a "Reconciliation Report") to be delivered to each Secured Party not later than 5:00 p.m. on the following Monday, (c) all documents and information submitted by Debtor to the United States Trustee, and (d) upon the reasonable request of a Secured Party, such other information pertaining to Debtor's operations, financial affairs, and the Collateral, including but not limited to bills, invoices, bank statements, cancelled checks and receipts (collectively, the "Reporting Obligations" and each a "Reporting Obligation").

       3.2     <u>Access to Premises</u>. Upon the reasonable request of a Secured Party and 24 hour notice, Secured Parties are permitted to access to any individuals representing or retained by Debtor or any premises occupied by Debtor for the purpose of enabling such Secured Party to inspect and audit the Collateral and Debtor's books and records, so long as such access and inspection is reasonable and do not substantially interfere with Debtor's operations.

       3.3     <u>Insurance</u>. Debtor shall maintain at all times casualty and loss insurance coverage of the Collateral in compliance with the United States Trustee Guidelines and in an amount acceptable to each Secured Party to sufficiently cover each Secured Party's interests in the Collateral. Such insurance is to specifically include such Secured Party as a loss payee and additional insured. Debtor is required to deliver proof of such insurance to each Secured Party within 5 days of the entry of this Order.

SECTION 4. <u>Debtors Waivers, Consents and Releases</u>.

       4.1     <u>Debtor's Waivers</u>. Debtor waives any rights that it may have to (a) use Cash Collateral pursuant to section 363 during the Use Period on terms other than those set forth in this

Order, and (b) incur financing or indebtedness out of the ordinary course during the Use Period that includes the granting of liens, claims or interests in favor of such other party that are senior or pari passu with the liens, claims and interests in favor of Secured Parties.

4.2     Section 506(c) Waiver.  No costs or expenses of administration authorized to be paid by this Order (excluding fees and costs of the United States Trustee or the Court) incurred during the Use Period shall be charged against any Secured Party or the Collateral pursuant to sections 105, 506(c), 552(b) (with respect to the Court's ability to order otherwise as provided in such section), or any similar principle of law, without the prior written consent of such Secured Party, and no such consent shall be implied from any other action, inaction or acquiescence by such Secured Party.

SECTION 5.  Default; Rights and Remedies; Relief from Stay.

5.1     Event of Default.  An Event of Default under this Order shall occur upon any of the following events:  (a) a breach or failure to comply with any term, covenant, representation, warranty or requirement of this Order or any other order of the Court, (b) the granting in favor of any party other than Secured Parties of a security interest in or lien upon any Collateral or a claim against the Estate having priority senior or pari passu with the security interests, liens or claims in favor of the Secured Parties, except to the extent that such party had a security interest in or lien upon property of the Estate on the Petition Date that was senior in priority senior or pari passu with the security interests, liens or claims of each Secured Party existing on the Petition Date, (c) entry of an order converting this Case to a case under chapter 7 of the Bankruptcy Code, (d) entry of an order appointing or resulting in the appointment of a trustee in this Case, (e) entry of an order granting relief in favor of any other party (including lessors and landlords) that includes enabling such party to exercise state law or contractual rights and remedies with respect to property of the Estate that could have a material adverse effect on Debtor, its business or the Collateral, or (f) any stay, reversal, vacation or rescission of the terms of this Order, or any modification of any terms of this Order that is not reasonably acceptable to the Secured Parties.

5.2     Remedies on Occurrence of Event of Default.

    5.2.1   Notice of Default.  Upon the occurrence of an Event of Default, any Secured Party may provide notice of the default (a "Notice of Default") via email, facsimile or overnight mail to (a) Debtor, (b) counsel for Debtor, and (c) in the event an Official Committee of Unsecured Creditors is formed in the Case (the "Committee") and retains counsel, to counsel for the Committee.

    5.2.2   Consequences Upon Notice of Default.

        (a)     No Further Use of Cash Collateral.  Upon delivery of a Notice of Default or the last day of the Use Period, Debtor is prohibited from any further use of Cash Collateral without further written consent of Secured Parties or an order of the Court.

        (b)     Relief from Automatic Stay.  Upon Debtor's failure to cure an Event of Default within 5 days after the delivery of a Notice of Default, each Secured Party is entitled to file a declaration setting forth the evidence of the default and the service of the Notice of Default (the "Notice of Default Declaration") and request a hearing to consider a motion for relief from the automatic stay, a motion for the appointment of a chapter 11 trustee, or a motion to dismiss the Case, to be scheduled and heard on an expedited basis.

        (c)     Motion to Compel Production of Documents.  Upon Debtor's failure to cure an Event of Default within 5 days after the delivery of a Notice of Default with respect to a Reporting Obligation to a Secured Party or Secured Parties under the provisions of this Order, then each Secured Party is entitled to file a Notice of Default Declaration and request a hearing to consider a motion to compel production of documents by the Debtor to be scheduled and heard on an expedited basis.  The Court, in its discretion, may award attorneys' fees and costs to the prevailing party on a motion to compel production of documents.

    5.2.3   Retention of Rights.  Notwithstanding the occurrence of an Event of Default, each Secured Party retains all of its rights, interests, liens, privileges, claims and protections granted, authorized or acknowledged by this Order.

    5.2.4   Limited Relief from Automatic Stay to Effectuate Order.  The automatic stay provisions of section 362 and any other restriction or injunction imposed by an order of the

Court or by law are modified and vacated without further notice, application, motion, hearing, or order of the Court to the extent necessary to permit Secured Parties to perform any act authorized or permitted under this Order.

SECTION 6. <u>Other Rights and Matters</u>.

6.1 <u>Power to Waive Rights; Duties to Third Parties</u>. Each Secured Party retains the right to waive any interest, claim, right, remedy or privilege in its favor (a "Secured Party Right") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce any Secured Party Right, as applicable. Any waiver by a Secured Party of a Secured Party Right shall not be or constitute a continuing waiver. A delay in or failure to exercise or enforce any Secured Party Right shall neither constitute a waiver of such Secured Party Right, subject Secured Parties to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by Debtor, any obligor or any other person or entity to Secured Parties.

6.2 <u>Reservation of Rights</u>. This Order is in addition to and without prejudice to the interests, claims, rights, remedies, and privileges under the Bankruptcy Code, applicable documents or agreements, or law, in favor of Debtor, each Secured Party, or any other party in interest, which each such party fully reserves, including without limitation rights to seek further, different, or additional adequate protection, to seek relief from the automatic stay, to seek an injunction, to not consent to or oppose any request for further use of Cash Collateral or granting of any interest in any of the Collateral or priority in favor of any other party, to object to any sale of assets, to object to the allowance and/or payment of compensation of professionals or other persons or entities seeking compensation or reimbursement from Debtor's bankruptcy estate, and to pursue all non-bankruptcy claims, rights and remedies.

6.3 <u>Extension of Order; Further Hearing</u>. The Parties agree that the Use Period may be extended by further stipulation by the Parties and order of the Court (the "Use Period Extension"). In the event the Use Period Extension does not occur by September 15, 2015, the Court may conduct a hearing upon Debtor's request for an order authorizing Debtor's further use of cash collateral beyond the Use Period on shortened time on a date and time convenient to the Court

prior to September 30, 2015 (a "Further Hearing").  Further or additional papers and evidence in support of the Motion are to be filed and served (via electronic mail) no later than seven days before the Further Hearing at 5:00 p.m. (the "Additional Motion Papers").  Further or additional response or opposition to the Motion and the Additional Motion Papers is to be filed and served (via electronic mail) no later than two days before the Further Hearing at 5:00 p.m. (the "Responses").  Any reply to the Responses is to be filed and served (via electronic mail) no later than one day before the Further Hearing at 5:00 p.m.

BN 18779948v1

# EXHIBIT A

# BUDGET

A. Only to the extent necessary to avoid irreparable harm, and

B. Line item budget of income and expenses between <u>August 1, 2015, through and including September 30, 2015</u>:

Estimated 2015 Income & Expenses (2015 Crop Only)

| Income/Receipts | Monthly Budgets | | | | | | Total |
|---|---|---|---|---|---|---|---|
| | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 | |
| Boxes Conventional | 45,000 | 75,000 | 95,000 | 75,000 | 20,000 | - | 310,000 |
| Price/Box Conventional | $ 9.00 | $ 11.00 | $ 12.00 | $ 12.00 | $ 13.00 | - | |
| Boxes Organic | 45,000 | 70,000 | 90,000 | 70,000 | 30,000 | - | 305,000 |
| Price/Box Organic | $ 12.00 | $ 14.00 | $ 15.00 | $ 20.00 | $ 22.00 | - | |
| Freezer/Organic (20# Tray) | 2,500 | 2,500 | 2,500 | 15,000 | - | - | 22,500 |
| Freezer/Conv. (20# Tray) | 2,500 | 2,500 | 2,500 | 15,000 | - | - | 22,500 |
| Conv. Juice (20# Tray) | 1,000 | 1,000 | 1,000 | 5,000 | - | - | 8,000 |
| Organic Juice (20# Tray) | 1,000 | 1,000 | 1,000 | 5,000 | - | - | 8,000 |
| Total Sales/Sources | $ 1,011,400 | $ 1,871,400 | $ 2,556,400 | $ 2,692,000 | $ 920,000 | | $ 9,051,200 |
| Direct Expenses | | | | | | | |
| Less: Packaging Materials | (54,000) | (87,000) | (111,000) | (87,000) | (30,000) | - | (369,000) |
| Less: Cooling | (38,700) | (62,350) | (79,550) | (62,350) | (21,500) | | (264,450) |
| Less: Ranch Payroll | (420,900) | (601,500) | (707,620) | (707,620) | (280,600) | | (2,718,240) |
| Plus: Fed Taxes 7.65% | (32,199) | (46,015) | (54,133) | (54,133) | (21,466) | - | (207,945) |
| Plus: State Taxes 4.4% | (19,488) | (27,849) | (32,763) | (32,763) | (12,992) | - | (125,855) |
| Total Payroll Due | (472,587) | (675,364) | (794,516) | (794,516) | (315,058) | - | (3,052,040) |
| Cash from Operations | 446,113 | 1,046,686 | 1,571,334 | 1,748,134 | 553,442 | - | 5,365,710 |
| Indirect Expenses | | | | | | | |

| | | | | | | | |
|---|---:|---:|---:|---:|---:|---:|---:|
| Automotive DMV | 1,047 | 1,047 | 1,047 | 1,047 | 1,047 | | 5,235 |
| Advertising & Promotion | 1,500 | 1,500 | 250 | 250 | 250 | | 3,750 |
| Bank Charges | 300 | 300 | 300 | 300 | 300 | 300 | 1,800 |
| Chemicals (Note 2) | 39,660 | 39,660 | 39,660 | 18,000 | - | | 136,980 |
| Computer Expenses | 500 | 500 | 500 | 500 | 500 | | 2,500 |
| Commissions (Note 1) | 45,000 | 72,500 | 92,500 | 72,500 | 25,000 | - | 307,500 |
| Equipment Leases | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | | 100,000 |
| Fabrication | 500 | 500 | 500 | 500 | 500 | | 2,500 |
| Farm Supplies | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | | 7,500 |
| Fertilizers (Note 2) | 15,000 | 15,000 | 15,000 | - | - | | 45,000 |
| Fuel | 20,000 | 20,000 | 20,000 | 20,000 | 15,000 | | 95,000 |
| Insurance | 2,782 | 2,782 | 2,782 | 2,782 | 2,782 | | 13,910 |
| Land Rent - Packard | - | - | - | - | - | - | - |
| Land Rent - Trafton | 26,667 | 26,667 | 26,667 | 26,667 | 26,667 | 26,667 | 160,000 |
| Land Rent - Malatesta | - | - | - | - | - | | - |
| Marketing Asessments/MOA | - | 23,659 | - | - | - | | 23,659 |
| Office Expenses | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 12,000 |
| Organic Certifications | 383 | 383 | 383 | 383 | 383 | | 1,915 |
| Persimilis (organic pest control) | 7,000 | 7,000 | 7,000 | 7,000 | | | 28,000 |
| Property Taxes | - | - | - | - | - | - | - |
| PVWMA (Post) - New | 16,000 | 16,000 | 10,000 | 10,000 | 10,000 | | 62,000 |
| PVWMA (Pre) - Old | | | | | | | - |
| Repairs and maintenance | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | | 60,000 |
| Salaries (non-insiders) | 31,975 | 31,975 | 31,975 | 31,975 | 31,975 | 20,000 | 179,875 |
| Sanitation | 5,132 | 5,132 | 5,132 | 5,132 | 5,132 | | 25,660 |
| Shop/Office Rent | 6,940 | 6,940 | 6,940 | 6,940 | 6,940 | 2,000 | 36,700 |

BN 18779948v1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Software Support | 2,534 | 2,534 | 2,534 | 2,534 | 2,534 | 1,000 | 13,670 |
| Telephones | 2,877 | 2,877 | 2,877 | 2,877 | 2,877 | 500 | 14,885 |
| Third Party Audits | 300 | 300 | 300 | 300 | 300 | | 1,500 |
| Transportation Expenses | 500 | 500 | 500 | 500 | 500 | | 2,500 |
| US Trustee Fees | 9,750 | | | 13,000 | | | 22,750 |
| Utilities | 5,645 | 5,645 | 5,645 | 5,645 | 5,645 | 500 | 28,725 |
| Workers Comp Insurance | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 24,433 | 146,598 |
| Total Overhead | 301,925 | 343,334 | 332,425 | 288,765 | 198,265 | 77,400 | 1,542,112 |
| Net Cash Flow | 144,189 | 703,352 | 1,238,910 | 1,459,370 | 355,178 | (77,400) | 3,823,598 |
| **Cumulative Cash Flow** | 144,189 | 847,541 | 2,086,451 | 3,545,820 | 3,900,998 | 3,823,598 | |

Notes

1 – Commissions are estimated at $.50/box as follows: (a) $.35/box to Santa Cruz Sales, LLC (per stipulation among interested parties and proposed order with marketing agreement filed concurrently by Debtor); and (b) $.15/box to Fritz Koontz provided both (i) the Debtor's monthly average for sales on fresh fruit is at least $9.00/box for conventional and $11.00/box for organic and (ii) the Debtor's Net Cash Flow is at least 75% of projections listed herein.

2 - Fertilizer and Chemical expense figures were switched.

**END OF ORDER**

**COURT SERVICE LIST**

ECF Recipients.